ACCEPTED
15-25-00070-CV
FIFTEENTH COURT OF APPEALS
AUSTIN, TEXAS
5/27/2025 12:00 AM
CHRISTOPHER A. PRINE
CLERK

**No. 15-25-00070-CV**

*In the Fifteenth Court of Appeals*
*Austin, Texas*

FILED IN
15th COURT OF APPEALS
AUSTIN, TEXAS

5/27/2025 12:00:00 AM

CHRISTOPHER A. PRINE
Clerk

CITY OF HUNTSVILLE, TEXAS,
                    *Appellant*,

v.

LUCIO CASTILLEJA and
LAURA CASTILLEJA,
                    *Appellees*.

On Appeal from the 278th District Court of
Walker County, Texas

## APPELLANT'S BRIEF

> Ramon G. Viada III
> State Bar No. 20559350
> Viada & Strayer
> 17 Swallow Tail Court
> The Woodlands, Texas 77381
> (281) 419-6338
> rayviada@viadastrayer.com
>
> COUNSEL FOR APPELLANT
> CITY OF HUNTSVILLE

ORAL ARGUMENT REQUESTED

# IDENTITY OF PARTIES AND COUNSEL

**PARTIES TO THE TRIAL COURT'S ORDER:**

| | |
|---|---|
| **City of Huntsville** | Defendant/Appellant |
| **Laura Castilleja** | Plaintiff/Appellee |
| **Lucio Castilleja** | Plaintiff/Appellee |

**TRIAL AND APPELLATE COUNSEL:**

| | |
|---|---|
| **Ramon G. Viada III**<br>VIADA & STRAYER<br>The Woodlands, Texas | Trial and Appellate Counsel for Appellant |
| **Aaron Pavlock**<br>PAVLOCH LAW FIRM PLLC<br>Baytown, Texas | Trial Counsel for Appellees |
| **Robert Thomson**<br>THOMSON LAW FIRM<br>The Woodlands, TExas | Trial Counsel for Appellees |

# TABLE OF CONTENTS

**Page**

IDENTITY OF PARTIES AND COUNSEL . . . . . . . . . . . . . . . . . . . . . . ii

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INDEX OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

I.    STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . 2

III.  ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    Tort Claims Act Issues . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      B.    Constitutional Takings Issues . . . . . . . . . . . . . . . . . . . . . . 5

IV.   FACTUAL AND PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . 5

      A.    Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      B.    Procedural Background. . . . . . . . . . . . . . . . . . . . . . . . . . . 9

V.    SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

VI.   ARGUMENT & AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    Combined Plea/MSJ: Applicable Standards of Review . . . . 14

      B.    Government Immunity, Generally . . . . . . . . . . . . . . . . . . . 18

      C.    Property Damage Immunity Waivers: Overview. . . . . . . . . 20

iii

D.    Section 101.021(1) Property Damage Claims. . . . . . . . . . . . 21

      1.    *Res Ipsa Loquitur*, Generally . . . . . . . . . . . . . . . . . . . 22

      2.    No Pleading to Support *Res Ipsa Loquitur* . . . . . . . . 24

      3.    *Res Ipsa* Factor 1: No Evidence of Sewer Backup Absent Negligence . . . . . . . . . . . . . . . . . . . . . . 25

      4.    *Res Ipsa* Factor 2: No Evidence to Show the Operation of the Jetter Truck to be Most Plausible Explanation . . . . . . . . . . . . . . . . . . . . . . . . . 29

      5.    Conclusive Proof Negating Negligence . . . . . . . . . . . . 31

      6.    No Fact Issue Showing That Use of Operation of the Jetter Truck Proximately Caused the Sewage Overflow . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

E.    Constitutional Takings Claims. . . . . . . . . . . . . . . . . . . . . . . 36

F.    Section 101.021(2) Personal Injury Claims . . . . . . . . . . . . . 39

      1.    Non-Compensability of Emotional Distress Caused by Property Damage . . . . . . . . . . . . . . . . . . . . 40

      2.    No Evidence of Other Bodily Injury . . . . . . . . . . . . . . 44

      3.    No Fact Issue of Negligence under Section 101.021(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46

G.    Derivative Official Immunity . . . . . . . . . . . . . . . . . . . . . . . . 46

H.    Claims for Punitive Damages . . . . . . . . . . . . . . . . . . . . . . . . 49

I.    Claims for Attorney's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . 49

VII.  PRAYER. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 50

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . 51

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 52

APPENDIX. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

    A.    Order Denying Plea to the Jurisdiction (CR 237)

    B.    Tex. Civ. Prac. & Rem. Code § 101.021

    C.    Tex. Civ. Prac. & Rem. Code § 101.023

    D.    Tex. Civ. Prac. & Rem. Code § 101.024

    E.    Tex. Civ. Prac. & Rem. Code § 101.025

    F.    Tex. Const. Art. 1, Sec. 17

# INDEX OF AUTHORITIES

**Cases**                                                  **Page(s)**

*Aguilar v. Trujillo,*
162 S.W.3d 839 (Tex. App.—El Paso 2005, pet. denied) . . . . . . . . 24

*Alamo Heights Indep. Sch. Dist. v. Clark,*
44 S.W.3d 755 (Tex. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Batres v. Alamo City Harley Davidson, Inc.,*
No. 04-16-00712, 2018 Tex. App. LEXIS 490, 2018 WL 442731
(Tex. App.—San Antonio Jan, 17, 2018, no pet.). . . . . . . . . . . . . . 24

*Bible Baptist Church v. Cleburne,*
848 S.W.2d 826 (Tex. App.—Waco 1993, writ denied) . . . . . . . . . 18

*Brown Express Co., Inc. v. Burns,*
608 S.W.2d 291 (Tex. Civ. App.—Waco 1980, no writ) . . . . . . . . . 24

*Buck v. Palmer,*
381 S.W.3d 525 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cavin v. Abbott,*
545 S.W.3d 47 (Tex. App.—Austin 2017, no pet.) . . . . . . . . . . . . . 43

*Chambers-Liberty Counties Navigation Dist. v. State,*
575 S.W.3d 339 (Tex. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Dallas v. Jennings,*
142 S.W.3d 310 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . 21, 37, 38

*City of Dallas v. Sanchez,*
494 S.W.3d 722 (Tex. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Fort Worth v. Holland,*
748 S.W.2d 112 (Tex. App.—Fort Worth 1988, writ denied) . . . . 29

*City of Houston v. Guthrie*,
   332 S.W.3d 578 (Tex. App.—Houston [1st Dist.]
   2009, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*City of Houston v. Harris*,
   192 S.W.3d 167 (Tex. App.—Houston [14th Dist.]
   2006, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*City of Houston v. Rodriguez*,
   704 S.W.3d 462 (Tex. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*City of Houston v. Sauls*,
   690 S.W.3d 60 (Tex. 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*City of Huntsville v. Valentine*,
   No. 13-22-00528-CV, 2023 Tex. App. LEXIS 6301,
   2023 WL 5282954 (Tex. App.—Corpus Christi
   Aug. 17, 2023, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*City of Lancaster v. Chambers*,
   883 S.W.2d 650 (Tex. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . 47, 48

*City of LaPorte v. Barfield*,
   898 S.W.2d 288 (Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*City of Magnolia 4A Econ. Dev. Corp. v. Smedley*,
   533 S.W.3d 297 (Tex. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*City of Odessa v. Bell*,
   787 S.W.2d 525 (Tex. App.—El Paso 1990, writ denied) . . . . . . . 49

*City of San Antonio v. El Dorado Amusement Co.*,
   195 S.W.3d 238 (Tex. App.—San Antonio 2006, pet. denied). . . . 49

*City of San Antonio v. Pollock*,
   284 S.W.3d 809 (Tex. 2009) . . . . . . . . . . . . . . . . . . . . 21, 37, 39, 49

vii

*City of Tyler v. Likes*,
    962 S.W.2d 489 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . 21, 41, 42, 45

*City of Wichita Falls v. Alvarado*,
    802 S.W.2d 424 (Tex. App.—Fort Worth 1991, writ denied) . . . . 29

*City of Wylie v. Taylor*,
    362 S.W.3d 855 (Tex. App.—Dallas 2012, no pet.) . . . . . . . . . . . 43

*Creel v. Woodlands Twp.*,
    413 S.W.3d 502 (Tex. App.—Beaumont 2013, no pet.) . . . . . . . . 39

*Customer Co. v. City of Sacramento*,
    10 Cal. 4th 368, 895 P.2d 900 (1995) . . . . . . . . . . . . . . . . . . . . . . 39

*Dall. Area Rapid Transit v. Whitley*,
    104 S.W.3d 540 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Davis v. City of Palestine*,
    988 S.W.2d 854 (Tex. App.—Tyler 1999, no pet.) . . . . . . . . . . . . 42

*DeWitt v. Harris County*,
    904 S.W.2d 650 (Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*El Paso Cty. Water Improvement Dist. #1 v. Ochoa*,
    554 S.W.3d 51 (Tex. App.—El Paso 2018, no pet.) . . . . . . . . . . . 43

*Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*,
    962 S.W.2d 193 (Tex. App.—Houston [1st Dist.]
    1998, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Estrada v. Central Power & Light Co.*,
    336 S.W.2d 768 (Tex. Civ. App.—San Antonio
    1960, writ ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*FFE Transp. Servs., Inc. v. Fulgham*,
    154 S.W.3d 84 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Ford Motor Co. v. Ridgway*,
    135 S.W.3d 598 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Francis v. Bob Meador Company, Inc.*,
    517 S.W.2d 693 (Tex. Civ. App.—Houston [14th Dist.]
    1974, no writ) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Ft. Worth Belt Ry. Co. v. Jones*,
    106 Tex. 345, 166 S.W. 1130 (1914) . . . . . . . . . . . . . . . . . . . . . . . . 23

*Gulf Coast Ctr. v. Curry*,
    658 S.W.3d 281 (Tex. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 41

*Hale v. CenterPoint Energy Houston Elec., LLC*,
    No. 01-16-00963-CV, 2018 Tex. App. LEXIS 5997,
    2018 WL 3651619 (Tex. App.—Houston [1st Dist.]
    Aug. 2, 2018, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Harris Cnty. Flood Control Dist. v. Kerr*,
    499 S.W.3d 793 (Tex. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Harris County v. Sykes*,
    136 S.W.3d 635 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Harris Cty. v. Annab*,
    547 S.W.3d 609 (Tex. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Heckman v. Williamson Cty.*,
    369 S.W.3d 137 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jones v. Tarrant Cnty. Util. Co.*,
    638 S.W.2d 862 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Lambert v. Gearhart-Owen Industries, Inc.*,
    626 S.W.2d 845 (Tex. App.—Corpus Christi 1981, no writ) . . . . . 24

*Mack Trucks, Inc. v. Tamez*,
    206 S.W.3d 572 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Manbeck v. Austin Indep. Sch. Dist.*,
    381 S.W.3d 528 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Marathon Corp. v. Pitzner*,
    106 S.W.3d 724 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Marathon Oil Co. v. Sterner*,
    632 S.W.2d 571 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*MBP Corp. v. Bd. of Trs. of the Galveston Wharves*,
    297 S.W.3d 483 (Tex. App.—Houston [14th Dist.]
    2009, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Merrell Dow Pharms., Inc. v. Havner*,
    953 S.W.2d 706 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

*Meyers v. JDC/Firethorne, Ltd.*,
    548 S.W.3d 477 (Tex. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Miller v. Campbell County*,
    854 P.2d 71 (Wyo. 1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Mobil Chem. Co. v. Bell*,
    517 S.W.2d 245 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-24

*Neely v. Wilson*,
    418 S.W.3d 52 (Tex. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*New Amsterdam Casualty Co. v. Texas Indus. Inc.*,
    414 S.W.2d 914 (Tex. 1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*O'Day v. Sakowitz Bros.*,
    462 S.W.2d 119 (Tex. Civ. App.—Houston [1st Dist.]
    1970, writ ref'd n.r.e.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 31

*Pekar v. St. Luke's Episcopal Hospital*,
　　570 S.W.2d 147 (Tex. Civ. App.—Waco 1978, writ ref'd n.r.e.) . . 23

*Port of Houston Authority v. Aaron*,
　　415 S.W.3d 355 (Tex. App.—Houston [1st Dist.]
　　2013, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Prieto v. Val Verde Memorial Hospital*,
　　747 S.W.2d 487 (Tex. App.—San Antonio 1988, no writ) . . . . . . . 25

*Reata Constr. Corp. v. City of Dallas*,
　　197 S.W.3d 371 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Rebel Drilling Co., L.P. v. Nabors Drilling USA, Inc.*,
　　No. 14-02-00841-CV, 2004 Tex. App. LEXIS 8320,
　　2004 WL 2058260 (Tex. App.—Houston [14th Dist.]
　　Sept. 16, 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Roark v. Allen*,
　　633 S.W.2d 804 (Tex. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Rodriguez v. Panther Expedited Servs.*,
　　No. 04-17-00291-CV, 2018 Tex. App. LEXIS 5857,
　　2018 WL 3622066 (Tex. App.—San Antonio
　　July 31, 2018, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Rounsaville v. Bullard*,
　　154 Tex. 260, 276 S.W.2d 791 (1955) . . . . . . . . . . . . . . . . . . . . . . 23

*Rusk State Hosp. v. Black*,
　　392 S.W.3d 88 (Tex. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ryder Integrated Logistics, Inc. v. Fayette County*,
　　453 S.W.3d 922 (Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*San Antonio State Hosp. v. Guerrero*,
　　No. 04-04-00396-CV, 2004 Tex. App. LEXIS 8876,

2004 WL 2236619 (Tex. App.—San Antonio
Oct. 6, 2004, no pet.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Schindler Elevator Corp. v. Ceasar*,
670 S.W.3d 577 (Tex. 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 26

*Schwartz v. City of San Antonio*
*ex rel. City Pub. Serv. Bd. of San Antonio*,
No. 04-05-00132-CV, 2006 Tex. App. LEXIS 995,
2006 WL 285989 (Tex. App.—San Antonio
Feb. 8, 2006, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

*Soto v. Texas Indus. Inc.*,
820 S.W.2d 217 (Tex. App.—Fort Worth 1991, no writ) . . . . . . . . 26

*Tarrant Cty. v. Bonner*,
574 S.W.3d 893 (Tex. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Tarrant Reg'l Water Dist. v. Gragg*,
151 S.W.3d 546 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Tex. Ass'n of Bus. v. Tex. Air Control Bd.*,
852 S.W.2d 440 (Tex. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*Tex. Dep't of Pub. Safety v. Bonilla*,
481 S.W.3d 640 (Tex. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

*Texas Dep't of Parks & Wildlife v. Miranda*,
133 S.W.3d 217 (Tex. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Texas Highway Dep't v. Weber*,
147 Tex. 628, 219 S.W.2d 70 (Tex. 1949) . . . . . . . . . . . . . . . . . . . 37

*Texas Natural Res. Conservation Comm'n v. White*,
46 S.W.3d 864 (Tex. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Thomas v. Long,*
    207 S.W.3d 334 (Tex. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

*Town of Shady Shores v. Swanson,*
    590 S.W.3d 544 (Tex. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14

*Trinity Universal Ins. Co. v. Cowan,*
    945 S.W.2d 819 (Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Turbines, Inc. v. Dardis,*
    1 S.W.3d 726 (Tex. App.—Amarillo 1999, pet. denied)
    (op. on reh'g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Universal Atlas Cement Company v. Oswald,*
    138 Tex. 159, 157 S.W.2d 636 (1941) . . . . . . . . . . . . . . . . . . . . . . . 25

*West Inland Energy, Inc. v. Rockwater Energy Sols., Inc.,*
    No. 11-19-291-CV, 2021 Tex. App. LEXIS 4392,
    2021 WL 2277810 (Tex. App.—Eastland
    June 4, 2021, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Wichita Falls Traction Co. v. Elliott,*
    125 Tex. 248, 81 S.W. 2d 659 (1935) . . . . . . . . . . . . . . . . . . . . . 23, 31

*Wooley v. Schaffer,*
    447 S.W.3d 71 (Tex. App.—Houston [14th Dist.]
    2014, pet. denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.,*
    449 S.W.3d 98 (Tex. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## Statutes, Rules, and Other Citations

TEX. CONST. art. I, § 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. CIV. PRAC. & REM. CODE § 101.021 . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. CIV. PRAC. & REM. CODE § 101.021(1) . . . . . . . . . . . . . . . . . . . . 20, 21

TEX. CIV. PRAC. & REM. CODE § 101.021(2) . . . . . . . . . . . . . . . . . . . . . . 39

TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(32) . . . . . . . . . . . . . . . . . . 18

TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9) . . . . . . . . . . . . . . . . . . . 18

TEX. CIV. PRAC. & REM. CODE § 101.024 . . . . . . . . . . . . . . . . . . . . . . . . 49

TEX. CIV. PRAC. & REM. CODE § 101.025(a) . . . . . . . . . . . . . . . . . . . . . 41

TEX. CIV. PRAC. & REM. CODE § 101.057(2) . . . . . . . . . . . . . . . . . . . . . 21

TEX. CIV. PRAC. & REM. CODE § 54.014(a)(8) . . . . . . . . . . . . . . . . . . . . 1

TEX. CONST. art. I, § 17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

TEX. R. CIV. P. 166a(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 38, 45

## Other Publications

BLACK'S LAW DICTIONARY, 906 (10th ed. 2014) . . . . . . . . . . . . . . . . . . . 43

THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE,
(5th ed. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

## CITY OF HUNTSVILLE'S APPELLANT'S BRIEF

Defendant-Appellant City of Huntsville (the "City") files its Appellant's Brief.

## I.   STATEMENT OF THE CASE.

This sewer overflow case arises under the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.021 and the takings clause of the Texas Constitution, TEX. CONST. art. I, § 17.

Plaintiff-Appellees, Lucio and Laura Castilleja (collectively, the "Castillejas"), own the quarter-acre tract and mobile home at 923 Birmingham Street, in Huntsville, Texas. The Castillejas allege that a City work crew, operating a sewer jetting truck to clear a clog in the city sewer main that runs beneath Birmingham Street, caused raw sewage to overflow their toilet and ruin their mobile home.

As to all claims and remedies sought, the District Court denied the City's plea to the jurisdiction and immunity-based no-evidence motion for summary judgment. (CR 237). The City timely filed this interlocutory appeal from that ruling. (CR 240). Appellate jurisdiction lies under TEX. CIV. PRAC. & REM. CODE § 54.014(a)(8). *See also Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 549 (Tex. 2019) ("[S]ection 51.014(a)(8) allows an interlocutory appeal to be taken when 'the trial court denies the

governmental entity's claim of no jurisdiction, whether it has been asserted by a plea to the jurisdiction, a motion for summary judgment, or otherwise.'") (quoting *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004)).

## II. STATEMENT REGARDING ORAL ARGUMENT.

The City requests oral argument in this important jurisdictional appeal. By denying the City's combined plea and no-evidence motion for summary judgment, the trial court is effectively proceeding on claims the Texas Supreme Court has definitively rejected, even for non-immune entities – claims for emotional distress resulting from mere property damage, attorneys' fees based upon alleged tort liability, and negligence claims merely upon incantation of *res ipsa loquitur*, with no pleadings or proof to support the application of that doctrine.

Shortly after a city public works work crew used a pressurized water jet to dislodge a blockage in a city sewer line, sewer water overflowed the Castillejas' toilet and spilled into their mobile home. The sewer line was a gravity line. The mobile home was situated in a deep depression, only a few inches above the sewer line, with no back-flow protection. In their response to the City's no-evidence motion for summary judgment, the

2

Castillejas offered no proof of negligence but for the first time contended that negligence must be presumed under the doctrine of *res ipsa loquitur*. Unrebutted expert testimony proved the City crew used appropriate care and followed industry standards to clear the blockage in the city sewer main.

If the ruling below stands, cities will be presumed negligent for any sewer backup that occurs in connection with a jetting operation to clear a routine sewer blockage. Oral argument will assist the Court to clarify this important issue and the other issues raised by this case.

## III. ISSUES PRESENTED.

### A. Tort Claims Act Issues.

1. Whether the Castillejas' pleadings placed *res ipsa loquitur* in issue.

2. Whether a fact issue exists on the essential elements of *res ipsa loquitur*.

3. Whether legally sufficient evidence shows that any city employee, in the operation of a motorized vehicle or motorized equipment, breached a tort duty of care owed to the Castillejas.

4. Whether legally sufficient evidence shows that any city employee, through the use of tangible personal or real property, breached a tort duty of care owed to the Castillejas.

3

5.  Whether the evidence conclusively disproves the allegation that the City breached a tort duty of care to the Castillejas in its use of real or personal property, including any use of motor-driven equipment or vehicle.

6.  Whether the evidence conclusively proves that the city employee supervising the operation of the jetting truck used to clear the blocked sewer main would be entitled to official immunity as a matter of law if such employee had been sued individually.

7.  Whether the Castillejas' claims for emotional distress injuries and inconvenience caused by damage to their mobile home and personal possessions are non-compensable as a matter of common law and under the Tort Claims Act.

8.  Whether legally sufficient evidence shows that Lucio Castilleja sustained any compensable "personal injury" to support a claim under Section 101.021(2) of the Tort Claims Act.

9.  Whether legally sufficient evidence shows that Laura Castilleja sustained any compensable "personal injury" to support a claim under Section 101.021(2) of the Tort Claims Act.

10. Whether the Tort Claims Act authorizes the Castillejas' claims for exemplary damages.

11. Whether the Tort Claims Act authorizes the Castillejas' claims for attorneys' fees.

4

**B.    Constitutional Takings Issues**.

1.    Whether legally sufficient evidence shows that the City intentionally acted in such a manner as to "take" the Castillejas' property.

2.    Whether the evidence conclusively proves that the City lacked the intent element of a takings claim.

3.    Whether legally sufficient evidence shows that the City took or damaged the Castillejas' property for "public use."

4.    Whether TEX. CONST. art. I, Sec. 17 authorizes the recovery of personal injury damages, including emotional distress caused by property damage.

5.    Whether TEX. CONST. art. I, Sec. 17 authorizes the Castillejas' claims for exemplary damages.

6.    Whether TEX. CONST. art. I, Sec. 17 authorizes the Castillejas' claims for attorneys' fees.

## IV.    FACTUAL AND PROCEDURAL BACKGROUND.

**A.    Facts**.

The Castillejas own the lot and mobile home at 923 Birmingham Street, in Huntsville, Texas. *See* Pet., ¶¶ 11 (CR 8-9). Allegedly, a City work crew, operating a sewer jetting truck to clear a clog in the city sewer line that runs beneath Birmingham Street, caused raw sewage to overflow their toilets and ruin their mobile home. *Id.*, at ¶¶ 15 (CR 11-12).

5

The Castillejas have resided at that location since approximately 2000. *Id.*, at ¶ 11 (CR 8). As demonstrated by measurements made by the City's engineering expert, Mr. Michael Kurzy, P.E., the Castilleja mobile home was constructed approximately six feet below the grade of the road and only a few inches above the grade of the sewer main. Kurzy Declar., at ¶ 9 (CR 127-28). Below is a recent photograph of the mobile home taken from the street:



(CR 141).

In June 2000, more than two decades before the accident, the City Building Official who permitted the construction cautioned the Castillejas and their builder that the low elevation of the mobile home rendered it

vulnerable to sewer backups. *See* Building Permits (CR 47-48). Nevertheless, the Castillejas failed to equip their property with backflow prevention devices that allow water or sewage to flow only one way – away from the customer's house. Lawler Declar., at ¶ 5 (CR 121); Bruno Declar., at ¶ 3 (CR 123); Kurzy Declar., at ¶ 9 (CR 127-28).

A six-inch city sewer main serves wastewater needs of 38 properties, including those on the 900 block of Birmingham Street. Kurzy Declar., at ¶ 8 (CR 127). The pipe is of adequate size to handle the upstream connections. *Id.* The City had no history of overflow problems with this six-inch sewer main. *Id.*, at ¶ 5 (CR 125-26); Lawler Declar., at ¶ 2 (CR 120). Before the incident, the Castillejas had never experienced an overflow of sewage into their mobile home, and they had never complained to the City of any problems in the sewer lines. Lucio Castilleja Depo., at pg. 11, ln. 7-15; pg. 43, ln. 21-25; pg. 44, ln. 6-9 (CR 158, 160-61). After the overflow event, the sewer main was inspected by video camera and found to be in good working condition. Kurzy Declar., at ¶¶ 5-7 (CR 125-27); Lawler Declar., at ¶ 4 (CR 121).

The facts of the backup are undisputed. On November 3, 2022, at 11 AM, a resident at nearby 917 Birmingham reported a line blockage. Bruno

7

Declar., at ¶ 2 (CR 122). The line was surcharged to within 3-inches of the top of the manhole. *Id.* The blockage was upstream of the Castillejas' mobile home. *Id.*

The City jetted the line, applying procedures and water pressures recognized as proper according to industry standards. Bruno Declar., at ¶ 2 (CR 122); Kurzy Declar., at ¶¶ 4-5 (CR 125). After the crew discontinued the jetting operation, the blockage cleared and the surcharged wastewater in the line began moving downstream by the force of gravity. Bruno Declar., at ¶ 2 (CR 122). Sometime later, Laura Castilleja exited her mobile home to inform the city work crew that raw sewage had entered her house. *Id.* Residents of other low lying residences on the down slope, at 921 and 925 Birmingham, also complained of an overflow into their homes. Kurzy Declar., at ¶¶ 4, 9 (CR 125, 127-28).

Mr. Mike Bruno, the field supervisor of the sewer main jetting operation, then stepped onto the Castilleja lot and released the surcharge in the line by opening the clean-out cap on the lateral sewer line connecting the Castilleja home to the six-inch City sewer main. Bruno Declar., at ¶ 3 (CR 123). The lateral line is owned and controlled by the property owner, not the City. *Id.* (CR 123). Opening the clean out cap on

8

private property prior to jetting a clogged sewer main is not a standard city operating precaution (Lawler Declar., at ¶ 6, CR 121); nor is it a recommended precaution according to recognized industry standards, such as the Jetter Code of Practice promulgated by the National Association of Sewer Service Companies (NASSCO). Kurzy, at ¶ 6 (CR 126).

## B. Procedural Background.

The original petition is the live pleading. (CR 5-37). The petition invokes both subsections of Section 101.021 of the Tort Claims Act to support claims of negligence (CR 7-8), and Article I, Section 17 of the Texas Constitution to support a claim of a taking of property. (CR 33-35).

The petition alleges several acts of simple and gross negligence, but does not allege *res ipsa loquitur*. Most allegations in the 37-page petition are boilerplate. In general terms, the petition describes the City's sewer treatment plant, lift station pumps, sewer mains (referred to as "conduits") and manhole covers, alluding to mechanical parts, some of which powered by electric motors. (CR 9-11). Buried within appear to be the following claims:

    1.    A city work crew, while operating a jetter truck, failed to open the clean out cap on the Castillejas' lateral sewer line as a precaution before using

9

pressurized water to clear a blockage in the sewer main (Pet., at ¶ 15 (CR 11-12);

2. The City negligently constructed, maintained, and operated its "sewer conduits" (*id.*, at ¶ 16 (CR 12));

3. The City was negligent in operating the jetter truck in some unspecified manner (*id.*, at ¶ 16) (CR 12-13)); and

4. The City was negligent in some undefined manner in failing to maintain or upgrade its jetter truck. (*id.*, at ¶ 16 (CR 13-14)).

The Castillejas' takings claim is also based upon essentially the same boilerplate allegations – that their property damage was "caused, in whole or in part, by the construction, maintenance and operation" of the City's entire "Waste Water Services Division" or "WWSD" (*id.*, at ¶ 43 (CR 34)) – defined to mean collectively the "Physical Plant and all such Components, the Sewer Conduits, and the Sewer Jetting Trucks." (Pet., ¶ 14(j) (CR 7)). Allegedly, the City "intentionally chose to operate the WWSD Sewer Jetting Truck so that it does not operate in a continuous, safe and reliable manner," and that the "City intentionally chose to maintain and operate the WWSD Sewer Jetting Truck and its Components in a manner which was substantially certain to result in the WWSD Raw Sewage Discharge." *Id.*

10

The petition seeks several categories of damages and other relief –

1.     loss of market value of real property (Pet., at ¶ 33, 40 (CR 29, 33));

2.     loss of market value of personal property (*id.*, at ¶ 40 (CR 33));

3.     personal injury, including mental anguish (*id.*);

4.     exemplary damages (*id*); and

5.     attorneys fees (*id.*, Prayer (CR 36-37).

The City moved to designate two responsible third parties, which the District Court granted – the developer, Lowell Mayrant, and Huntsville Manufactured Homes, the builder who placed the mobile home in the low-lying area without raising the elevation of the foundation. (CR 42-63, 83).

On January 22, 2025, the City filed its plea to the jurisdiction and no-evidence motion for summary judgment. (CR 89-161). On February 24, 2025, the Castillejas responded (CR 167-91), to which the City replied on March 5. (CR 192-205). The Court heard the plea/motion on March 6. (RR 1-15). The Court denied the plea in its entirety on March 12, 2025. (CR 237).

11

## V.  SUMMARY OF ARGUMENT.

Immunity from suit is preserved on each of the three claims asserted by the Castillejas, and thus, the District Court erred in denying the City's jurisdictional challenge.

First, as to the negligence claims for property damages under Section 101.021(1) of the Tort Claims Act, the Castillejas failed to prove that any city employee breached a tort duty of care owed to them while operating a motor-driven vehicle or motorized equipment. In response to the City's immunity-based no-evidence motion for summary judgment, the Castillejas offered no proof of negligence; they only asserted for the first time in their summary judgment response, without proof, *res ipsa loquitur*.

*Res ipsa* does not apply in this case because (1) it must be pled but it was not, (2) it must be proven to apply but it was not, and (3) even if it were held to apply without pleading or foundational proof, *res ipsa* operates only as a rebuttable presumption which vanished in the face of the City's uncontroverted expert testimony that the cause of the backup was not the use of the jetter device but the vulnerable founding of the Castillejas' mobile home at a low elevation without backflow protection. The City's expert engineer, Mr. Kurzy, concluded the overflow in this case

12

occurred because surcharged sewer water that had been trapped upstream behind the blockage rushed downstream by force of gravity after the blockage was removed. Since the Castilleja mobile home was built in a gully, scarcely a few inches above the grade of the sewer main and equipped with no backflow protection, the surcharged wastewater overran the toilet. Mr. Kurzy demonstrated that the jetter device was properly operated, and no proof shows otherwise.

Second, on the Castillejas' negligence claims for personal injuries under Section 101.021(2) of the Tort Claims Act, the Castillejas not only failed to prove negligence on the part of the City in the use or condition of property, but also failed to prove any compensable personal injury. Emotional distress and inconvenience caused by property loss is not a recoverable bodily injury under common law or under the Tort Claims Act.

Both of the Castillejas' negligence causes of action (under Sections 101.021(1) and 101.021(2)) are also defeated by the City's derivative public official immunity. Since the work crew operating the jetter device performed their discretionary duties in objective good faith, the City is immune.

Third, the Castillejas' takings claim is barred by immunity because they failed to raise a fact issue to show that the sewer backup was intentional rather than accidental. Moreover, their claims for personal injury cannot be pursued under the Texas Takings provision, which allows only for compensation for a taking of "property" for a public use.

In any event, immunity bars the Castillejas' claims for exemplary damages and attorney's fees in connection with their claims under the Tort Claims Act and the Takings Provision.

## VI. ARGUMENT & AUTHORITIES.

### A. Combined Plea/MSJ: Applicable Standards of Review.

Subject-matter jurisdiction is essential to a court's power to decide a case. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Several different procedural vehicles may be used to challenge a trial court's subject-matter jurisdiction, including a plea to the jurisdiction and a no-evidence summary judgment motion. *See Alamo Heights Indep. Sch. Dist. v. Clark*, 544 S.W.3d 755, 770 (Tex. 2018); *Town of Shady Shores v. Swanson*, 590 S.W.3d 544, 552 (Tex. 2019). "Appellate courts reviewing a challenge to a trial court's subject matter jurisdiction review the trial

14

court's ruling *de novo*. *Meyers v. JDC/Firethorne, Ltd.*, 548 S.W.3d 477, 486 (Tex. 2018).

In this case, the City asserted governmental immunity from suit as to each of Castillejas' claims by two procedural vehicles – a plea to the jurisdiction and a no-evidence motion for summary judgment.

An immunity-based plea to the jurisdiction is reviewed under the pleading and proof standard set forth in *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). Analysis of whether jurisdiction exists begins with the plaintiff's live pleadings. *Id.* at 226. The plaintiff has the initial burden of alleging facts that affirmatively demonstrate the trial court's jurisdiction to hear the cause. *Id.* (citing *Texas Ass'n of Bus.*, 852 S.W.2d at 446). The plaintiff must plead facts that plausibly show that the claims asserted fit within a recognized waiver of immunity. *See City of Dallas v. Sanchez*, 494 S.W.3d 722, 725 (Tex. 2016) (per curiam) (citing *Wooley v. Schaffer*, 447 S.W.3d 71, 75-76 (Tex. App.—Houston [14th Dist.] 2014, pet. denied)); *see also City of Magnolia 4A Econ. Dev. Corp.*, 533 S.W.3d 297 (Tex. 2017) ("A pleadings challenge [to subject matter jurisdiction] argues that the plaintiff has not alleged facts that, if proven true, constitute a valid claim over which there is

15

jurisdiction."). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Wooley*, 447 S.W.3d at 76 (internal quotations omitted)).

Parties may also submit evidence at the plea-to-the-jurisdiction stage, and the trial court's review of an evidence-based plea "generally mirrors the summary judgment standard." *Chambers-Liberty Counties Navigation Dist. v. State*, 575 S.W.3d 339, 345 (Tex. 2019). "It is unquestionably [the] plaintiff['s] burden" to adduce evidence sufficient to demonstrate the existence of a fact issue if a governmental entity introduces evidence controverting jurisdictional facts in support of its plea. *City of Houston v. Harris*, 192 S.W.3d 167, 175 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "'[I]f the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law.'" *Chambers-Liberty Counties Navigation Dist.*, 575 S.W.3d at 345 (quoting *Miranda*, 133 S.W.3d at 228).

A no-evidence challenge to jurisdiction is essentially a motion for pretrial directed verdict. *See Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581 (Tex. 2006). Where a governmental unit contends no evidence exists to support an element of a claim for which governmental immunity has

16

been waived, "the plaintiff will be required to present sufficient evidence on the merits of her claims to create a genuine issue of material fact." *Id*.; TEX. R. CIV. P. 166a(i). Evidence is legally sufficient only if it "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (internal quotations omitted). However, "when the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." *Id*.

Where, as here, a jurisdictional challenge has been made on multiple grounds, and, as here, the jurisdictional plea was denied without any reason specified, the Court of Appeals must assume the plea was denied on all grounds asserted. *See, e.g., San Antonio State Hosp. v. Guerrero*, No. 04-04-00396-CV, 2004 Tex. App. LEXIS 8876, 2004 WL 2236619 (Tex. App.—San Antonio Oct. 6, 2004, no pet.) (mem. op.). In this case, since both parties have brought forth summary judgment evidence in the context of this hybrid no-evidence motion and a plea to the jurisdiction, "the differing burdens of the two forms of motion are of no import here. The ultimate question is simply whether a fact issue exists." *Neely v.*

17

*Wilson*, 418 S.W.3d 52, 59 (Tex. 2013) (quoting *Buck v. Palmer*, 381 S.W.3d 525, 527 & n.2 (Tex. 2012)).

## B. Government Immunity, Generally.

Absent legislative consent, governmental immunity protects cities from tort claims arising out of municipal governmental functions. *See Reata Constr. Corp. v. City of Dallas*, 197 S.W.3d 371, 374-75 (2006). The operation and maintenance of a sanitary sewer system is a governmental function. TEX. CIV. PRAC. & REM. CODE § 101.0215(a)(9), (a)(32); *Bible Baptist Church v. Cleburne*, 848 S.W.2d 826, 828 (Tex. App.—Waco 1993, writ denied) (same).

Governmental immunity, being an immunity *from suit* and not merely a defense to liability, operates as a subject-matter jurisdictional bar. *Tarrant Cty. v. Bonner*, 574 S.W.3d 893, 900 (Tex. 2019) (citing *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 93 (Tex. 2012)). An immunity-based challenge to subject-matter jurisdiction is decided on a claim-by-claim basis. *Thomas v. Long*, 207 S.W.3d 334, 338-39 (Tex. 2006) ("[I]t is proper for a trial court to dismiss claims over which it does not have subject matter jurisdiction but retain claims in the same case over which it has

jurisdiction.").[1] The City, therefore, has challenged the lower Court's subject-matter jurisdiction as to each of the Castillejas' claims.

Jurisdiction is also determined on a remedy-by-remedy basis. The types of relief expressly made available by an immunity-waiving statute operate as boundaries on the court's jurisdiction to grant the relief requested. *See Zachry Constr. Corp. v. Port of Hous. Auth. of Harris Cty.*, 449 S.W.3d 98, 109-10 (Tex. 2014); *see also Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 286 (Tex. 2022) ("a trial court must ascertain, as part of determining its jurisdiction, whether *and to what extent* the Tort Claims Act waives immunity from suit.") (emphasis added). The City, therefore, has also challenged the lower Court's subject-matter jurisdiction as to certain of the remedies for which the Castillejas have prayed.

---

[1] *See also City of Houston v. Guthrie*, 332 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("where the pleas to the jurisdiction challenged each and every cause of action or claim asserted in the petition, jurisdiction must be examined on a claim-by-claim basis") (citing *Thomas*, supra); *cf. Heckman v. Williamson Cty.*, 369 S.W.3d 137, 153 (Tex. 2012) (standing context, noting "a plaintiff must demonstrate that the court has jurisdiction over . . . each of his claims; the court must dismiss those claims (and only those claims) over which it lacks jurisdiction").

19

**C. Property Damage Immunity Waivers: Overview**.

The Castillejas seek compensation for property damage under two distinct waiver provisions – the Texas Tort Claims Act and Article I, Section 17 of the Texas Constitution.

The Tort Claims Act only allows recovery of property damage under Section 101.021(1) of the Act. "Under the Texas Tort Claims Act (TTCA), a municipality performing governmental functions is only liable for property damage caused by the negligent conduct of its employees if such damage arises from the operation or use of a motor-driven vehicle or motor-driven equipment." *City of Huntsville v. Valentine*, No. 13-22-00528-CV, 2023 Tex. App. LEXIS 6301, *6-7, 2023 WL 5282954 (Tex. App.—Corpus Christi Aug. 17, 2023, no pet.) (mem. op.) (citing TEX. CIV. PRAC. & REM. CODE § 101.021(1)). In relevant part, the property damage waiver, Section 101.021(1) of the TTCA, provides:

> A governmental unit in the state is liable for . . . property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> (A) the property damage, personal injury, or death arises from the operation or use of a

> motor-driven vehicle or motor-driven
> equipment; and
>
> (B)    the employee would be personally liable to the
>        claimant according to Texas law.

TEX. CIV. PRAC. & REM. CODE § 101.021(1). Intentional torts cannot be pursued under the Tort Claims Act. *See id*. at § 101.057(2).

By contrast, Article I, Section 17 of the Texas Constitution only allows compensation for an intentional taking of property for a public use. "For purposes of Article I, Section 17, a governmental entity acts intentionally if it knows either 'that a specific act [was] causing identifiable harm' or 'that the specific property damage [was] substantially certain to result from' the act." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009) (quoting *City of Dallas v. Jennings*, 142 S.W.3d 310, 314 (Tex. 2004)). "[T]he government's 'mere negligence which eventually contributes to the destruction of property is not a taking.'" *Id*. at 820 (quoting *City of Tyler v. Likes*, 962 S.W.2d 489, 504-05 (Tex. 1997)).

## D.    Section 101.021(1) Property Damage Claims.

To attack the Castillejas' claims under Section 101.021(1) of the Tort Claims Act, the City argued below that no legally sufficient evidence exists to show that any city employee breached a tort duty of care while

21

operating any motorized equipment or vehicle. (CR 91) (citing TEX. R. CIV. P. 166a(i)). The Castillejas' response attached no evidence of negligence but simply argued that *res ipsa loquitur* supplied an inference of negligence. (CR 173-74). As demonstrated below, this argument fails for three reasons: First, the Castillejas failed to plead facts sufficient to place *res ipsa loquitur* in issue. Second, no evidence exists to support the factual basis for applying the *res ipsa* inference in this case. Third, any presumption of *res ipsa* vanished in the face of the City's conclusive evidence negating that it was negligent in the use or operation of motor-driven equipment or vehicles.

### 1. *Res Ipsa Loquitur*, Generally.

*Res ipsa loquitur* is not a separate cause of action. *Jones v. Tarrant Cnty. Util. Co.*, 638 S.W.2d 862, 865 (Tex. 1982). It operates only as an inference of negligence rather than a presumption of it; *res ipsa* only shifts the burden of going forward with the evidence, not the burden of proof. *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245 (1974). The inference of negligence created by *res ispa*, moreover, is one that vanishes where the defendant comes forward with some evidence to exonerate itself from negligence, as the City has here. *O'Day v. Sakowitz Bros.*, 462 S.W.2d 119,

22

127 (Tex. Civ. App.—Houston [1st Dist.] 1970, writ ref'd n.r.e.) (citing *Wichita Falls Traction Co. v. Elliott*, 125 Tex. 248, 81 S.W. 2d 659 (1935)).

*Res ipsa loquitur* requires pleading and proof of two "mandatory elements":

> (1) the character of the accident must be such that it would not ordinarily occur in the absence of negligence; and

> (2) the instrumentality causing the injury must be shown to have been under the management and control of the defendant.

*Schindler Elevator Corp. v. Ceasar*, 670 S.W.3d 577, 583 (Tex. 2023); *Mobil Chem. Co. v. Bell*, 517 S.W.2d 245, 257 (1974).

The foundational facts of *res ipsa* "must be raised by direct evidence." *Pekar v. St. Luke's Episcopal Hospital*, 570 S.W.2d 147, 150 (Tex. Civ. App.—Waco 1978, writ ref'd n.r.e.); *cf. Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 728 (Tex. 2003) ("an inference stacked only on other inferences is not legally sufficient evidence"); *Rounsaville v. Bullard*, 154 Tex. 260, 265, 276 S.W.2d 791, 794 (1955) ("The fact relied upon to support the presumption must be proved.") (quoting of *Ft. Worth Belt Ry. Co. v. Jones*, 106 Tex. 345, 166 S.W. 1130, 1132 (1914)). Simply mouthing *res ipsa* in response to a no-evidence summary judgment motion is not enough

23

to place the applicability of that doctrine in issue. Even if the doctrine were adequately pled – and here it is not – it is inapplicable if the non-movant fails to offer legally sufficient proof of both of its mandatory elements. *See Aguilar v. Trujillo*, 162 S.W.3d 839, 850 (Tex. App.—El Paso 2005, pet. denied) ("The *res ipsa* doctrine is inapplicable to this case. The Aguilars did not present any evidence that groundwater contamination ordinarily does not occur in the absence of negligence. Consequently, the pleading of *res ipsa* does not defeat the no-evidence summary judgment motion.").[2]

## 2. No Pleading to Support *Res Ipsa Loquitur*.

*Res ipsa loquitur* must be specifically pled to give the defendant fair notice that the plaintiff intends to rely on it. *See Brown Express Co., Inc. v. Burns*, 608 S.W.2d 291, 293 (Tex. Civ. App.—Waco 1980, no writ) (citing *Mobil Chemical Company v. Bell*, 517 S.W.2d 245, 254 (Tex. 1975)).[3] The

---

[2] *Batres v. Alamo City Harley Davidson, Inc.*, No. 04-16-00712, 2018 Tex. App. LEXIS 490, *8-9, 2018 WL 442731 (Tex. App.—San Antonio Jan, 17, 2018, no pet.) ("In order to rely on the doctrine of *res ipsa loquitur* to defeat ACHD's no evidence motion, the Batreses were required to produce evidence on both the 'type of accident' and 'control' factors.").

[3] *See also Rodriguez v. Panther Expedited Servs.*, No. 04-17-00291-CV, 2018 Tex. App. LEXIS 5857, *29 2018 WL 3622066 (Tex. App.—San Antonio July 31, 2018, pet. denied) (mem. op.) ("Rodriguez did not plead *res ipsa loquitur*, and therefore, cannot rely upon it.") (citing *Brown*, 608 S.W.2d at 293); *Lambert v.*

Castillejas failed to allege *res ipsa loquitur*. The petition only alleges specific acts of negligence – that the City was negligent in the operation and maintenance of the jetter truck and in failing to open the clean-out cap on the lateral line on their property that connects to the city sewer main. *See* Pet., at ¶ 16 (CR 12-14). Nothing in the petition indicates that Castillejas intended to rely on *res ipsa*. "Hence "*res ipsa loquitur* is not in the case." *See Universal Atlas Cement Company v. Oswald*, 138 Tex. 159, 157 S.W.2d 636, 639 (1941).

### 3.   *Res Ipsa* Factor 1: No Evidence of Sewer Backup Absent Negligence.

*Res ipsa loquitur* is inapplicable where, as here (1) the plaintiff cannot rely on general knowledge to show that the accident would not occur without negligence, and (2) the plaintiff has not produced expert

---

*Gearhart-Owen Industries, Inc.*, 626 S.W.2d 845, 847 (Tex. App.—Corpus Christi 1981, no writ) ("A plaintiff is not entitled to invoke the res ipsa doctrine when he pleads specific acts of negligence and does not give the defendant fair notice in his pleadings that he intends to rely upon the doctrine."); *Estrada v. Central Power & Light Co.*, 336 S.W.2d 768, 768 (Tex. Civ. App.—San Antonio 1960, writ ref'd) ("In order to invoke the doctrine of res ipsa loquitur there are four elements which *must be pleaded* and proved: [stating elements].") (emphasis added); *Prieto v. Val Verde Memorial Hospital*, 747 S.W.2d 487, 489 (Tex. App.—San Antonio 1988, no writ) ("The doctrine of *res ipsa loquitur* may not be invoked where the petition alleges specific acts of negligence on the part of a defendant, and does not generally allege negligence or specifically plead reliance on *res ipsa*.") (citing *Francis v. Bob Meador Company, Inc.*, 517 S.W.2d 693, 696 (Tex. Civ. App.—Houston [14th Dist.] 1974, no writ) (and cases cited therein).

testimony that the injury ordinarily does not occur without negligence. *See, e.g., Schindler Elevator Corp.*, 670 S.W.3d at 583 (improper to instruct jury on *res ipsa* in elevator malfunction (hard stop) case where plaintiff's expert gave conflicting testimony on whether such malfunctions generally must be caused by negligent maintenance); *Marathon Oil Co. v. Sterner*, 632 S.W.2d 571, 573 (Tex. 1982) (reversing and rendering judgment for defendant in toxic exposure case where plaintiff failed to produce any evidence that the accident was the type usually associated with negligence).[4]

---

[4] *See also Soto v. Texas Indus. Inc.*, 820 S.W.2d 217, 220 (Tex. App.—Fort Worth 1991, no writ) (trial court did not abuse its discretion in denying a *res ipsa loquitur* instruction when the plaintiffs "presented no expert knowledge that concrete walls do not ordinarily fall in the absence of negligence" and general knowledge could not support the contention); *Rebel Drilling Co., L.P. v. Nabors Drilling USA, Inc.*, No. 14-02-00841-CV, 2004 Tex. App. LEXIS 8320, 2004 WL 2058260, at *13 (Tex. App.—Houston [14th Dist.] Sept. 16, 2004, no pet.) (mem. op.) (*res ipsa* jury instruction properly denied where no proof of general knowledge or expert testimony offered to demonstrate "that blowouts do not occur in the absence of negligence"); *Hale v. CenterPoint Energy Houston Elec., LLC*, No. 01-16-00963-CV, 2018 Tex. App. LEXIS 5997, *8, 2018 WL 3651619, at *2 (Tex. App.—Houston [1st Dist.] Aug. 2, 2018, pet. denied) (mem. op.) (affirming no-evidence summary judgment where plaintiff, injured by electrical transformer catching fire, failed to show that such a fire generally does not occur without negligence); *West Inland Energy, Inc. v. Rockwater Energy Sols., Inc.*, No. 11-19-291-CV, 2021 Tex. App. LEXIS 4392, *16-17, 2021 WL 2277810 (Tex. App.—Eastland June 4, 2021, pet. denied) (summary judgment affirmed on claim for damage to oil well arising out of chemical treatment; res ipsa inapplicable because plaintiff "failed to carry its burden to show that the claimed injury to the well is a type that would not ordinarily occur in the absence of negligence.").

"Expert testimony is necessary to establish the applicable standard of care 'when the alleged negligence is of such a nature as not to be within the experience of the layman.'" *Schwartz v. City of San Antonio ex rel. City Pub. Serv. Bd. of San Antonio*, No. 04-05-00132-CV, 2006 Tex. App. LEXIS 995, 2006 WL 285989, at *2 (Tex. App.—San Antonio Feb. 8, 2006, pet. denied) (mem. op.) (quoting *FFE Transp. Servs., Inc. v. Fulgham*, 154 S.W.3d 84, 90 (Tex. 2004)); *see also Roark v. Allen*, 633 S.W.2d 804, 809 (Tex. 1982). In this case, the Court cannot judicially notice that a sewage backup of the type that occurred is unlikely to happen absent negligence on the part of the City in its operation of the jetter device. Not only is clearing a blocked sewer line outside the realm of experience of the ordinary, prudent person, but also the equipment and techniques used are unfamiliar to an ordinary person.

This case is thus analogous to *Schwartz v. City of San Antonio*, where the plaintiff alleged that the City's negligence in re-energizing downed electrical power lines caused the plaintiff to be shocked when she touched a chain-link fence in her yard. Like the Castillejas, Schwartz failed to designate an expert to address the applicable standard of care – whether the City was negligent when it re-energized its electrical lines. Like the

27

Castillejas, Schwartz argued only that negligence could be inferred through *res ipsa loquitur*, asserting – *without proof* – that the circumstances of her injury could not have occurred absent negligence on the part of the City. The Court, however, rejected this assertion, reasoning:

> [D]etermining whether electrical services were negligently provided, particularly whether the downed wires were improperly re-energized, requires specialized knowledge. Providing energy to the general public involves specialized equipment, and its techniques and concepts are unfamiliar to the ordinary person. Few people not involved in the energy-provider industry are familiar with electrical poles and appurtenances such as wires, transformers, insulators, cross-arms, and with the type of inspection, maintenance, and training they require. What a power company's practices and procedures should be, or what industry standards are, when a circuit breaker within an electrical distribution is tripped are not within a person's general knowledge.
> . . .
>
> "[W]hat a power company's practices and procedures should be, or what industry standards are, when a circuit breaker within an electrical distribution is tripped is not within a person's general knowledge. Therefore, we cannot say that because the fence was electrified, CPS must have necessarily acted negligently."

*Schwartz*, 2006 Tex. App. LEXIS 995, *11-12, 15 (internal citations deleted).[5]

No evidence exists in the present case to prove that a sewage backup of the type that occurred in this case likely cannot happen absent negligence on the part of the City in its operation of the jetter device. Not only is clearing a blocked sewer line not within the realm of experience of the ordinary, prudent person, but doing so requires use of specialized jetter equipment and techniques that are unfamiliar to the ordinary person.

      4.    *Res Ipsa* <u>Factor 2: No Evidence to Show the Operation of the Jetter Truck to be Most Plausible Explanation</u>.

For *res ipsa* to apply, the plaintiff need not totally negate other potential causes, but must establish that the defendant's negligence was the "most plausible" explanation for the accident. *Turbines, Inc. v. Dardis*, 1 S.W.3d 726, 742 (Tex. App.—Amarillo 1999, pet. denied) (op. on reh'g).

---

[5] The cases cited by the Castillejas in the court below (CR 173-74) actually support the City's position on appeal: *City of Fort Worth v. Holland*, 748 S.W.2d 112, 115 (Tex. App.—Fort Worth 1988, writ denied) (*res ipsa* jury instruction held erroneous because the evidence was "insufficient to show that the water main break would not ordinarily occur in the absence of negligence."); *City of Wichita Falls v. Alvarado*, 802 S.W.2d 424, 427 (Tex. App.—Fort Worth 1991, writ denied) (*res ipsa* instruction held erroneous in dog bite case because the plaintiffs "presented no expert testimony to the effect that dogs do not ordinarily disappear from animal control centers in the absence of negligence.").

29

However, *res ipsa loquitur* is inapplicable when the evidence shows two equally plausible explanations. *Id.* at 742-43 (concluding that the trial court erred by submitting a *res ipsa loquitur* instruction when there was facially credible evidence supporting both the defendant's theory of pilot error and the plaintiff's theory of engine failure and that both theories were equally probable as to the plane crash's cause); *Esco Oil & Gas, Inc. v. Sooner Pipe & Supply Corp.*, 962 S.W.2d 193, 195 (Tex. App.—Houston [1st Dist.] 1998, pet. denied) (*res ipsa* held "not available to fix responsibility when any one of multiple defendants, wholly independent of each other, might have been responsible for the injury").

In this case, despite the fact that the District Court had designated the Castillejas' developer and builder as potentially responsible third parties for situating the mobile home in a vulnerable location after the City Building Official had warned them of the danger of a sewer backup, the Castillejas offered no summary judgment evidence to negate negligence on the part of their developer and builder. During the hearing, plaintiffs' counsel conceded it was not the City's responsibility to add a backflow protection valve to the lateral line connecting the Castillejas' home to the City sewer main. (RR, pg. 13). The Castillejas had control over

how they or their builder set the elevation of the foundation of the mobile home in relation to the sewer main; the Castillejas owned the lateral line; and they thus controlled whether backflow protection was added to the lateral line. Their control over the facts causing the accident – the low foundation and no backflow protection – makes *res ipsa* inapplicable. *See Wichita Falls Traction*, 81 S.W.2d at 665 ("to invoke the rule, that the thing which caused the injury complained of must be under the management or control of defendant, and the accident must be such as in the ordinary course of things does not happen if those who have the management or control use proper care").

5.      Conclusive Proof Negating Negligence.

As noted above, *res ipsa* operates as a rebuttable inference. "If the defendant comes forward and explains the cause of the occurrence, or offers some evidence to exonerate itself from negligence, the inference or presumption vanishes and plaintiff then is put to the task of alleging and proving actionable negligence against the defendant." *O'Day*, 462 S.W.2d at 126-27 (citing *Wichita Falls Traction*, 81 S.W.2d at 664-65).

The District Court erred in overruling the City's plea because the evidence conclusively proves that the City's jetter crew used proper,

industry-recognized methods to clear a blockage in the sewer main (Kurzy Declar., at ¶¶ 5-6) (CR 125-26), and that when the blockage was cleared, the surcharged wastewater, by force of gravity, filled the downstream sewer line and escaped out of the low-lying toilet fixture in the Castillejas' home. *See* Kurzy Declar., at ¶ 6 (CR 126). The vehicle was not pumping water at all when the backup into the Castilleja home occurred. Bruno Declar., at ¶ 2 (CR 122); *see also* Laura Castilleja Depo., pg. 38, ln. 19 - pg. 39, ln. 10 (no knowledge whether truck in operation when backup occurred) (CR 152-53); Lucio Depo., at pg. 12, ln. 4 - 7 (not present when backup occurred) (CR 159).

The City's expert engineer, Mr. Kurzy, demonstrated that the cause of the overflow was by simple force of gravity, not by mechanically propelling sewage into the Castilleja home by means of a high-pressure jetter truck. The Castillejas' mobile home was founded in a deep trough beside the road, making the property vulnerable to any surcharge in the line; and the house was unprotected by means of a simple backflow protection valve or similar device. *See* Kurzy Declar., at ¶¶ 5-6, 9 (CR 125-28); Bruno Declar., at ¶ 3 (CR 123); Lawler Declar., at ¶ 5 (CR 121). According to Mr. Kurzy:

In evaluating the topography of the area, Baxter & Woodman, Inc. found the road elevation to which the manhole rims were set to be higher than the finished floor of the residences to the south. The road in the vicinity of 923 Birmingham is at elevation 377.17 feet above mean sea level. Elevation of the natural ground at the point of pipe entry into the residence is 370.7. Calculated flowline of the sewage main in the street at 923 Birmingham is at 370.12. Assuming a reasonable rise in the pipe of 2-feet above the ground to the finished floor of the residence, the point of overflow into the residence is estimated at 372.12. This means that a surcharge condition of 1.42 feet in the line would cause a backup in the residence. In reviewing the available data, it appears that the line in front of 923 Birmingham surcharged enough to impact three residences with sanitary sewer overflows in the residences. While this is not desirable, it is also not unusual. This is especially true when the residences are below the grade of the road and also close to the grade of the sanitary sewer. In summary, the relief of the blockage on Birmingham Road appears to have created a downstream surcharge condition resulting in backflow to three (3) residents. All three residents were located on property that was below the elevation of the road and had outlets that were not protected by backflow prevention devices and were within the zone of which surcharged conditions on the main line could have caused flow back into the residences. Reviewing the means and methods of the City, appropriate industry standards were followed and no negligence was evident in the review.

Kurzy Declar., at ¶ 9 (CR 127-28).

33

The Castillejas alleged that the City was negligent for not opening the clean-out cap on their privately-owned lateral line connecting the Castilleja residence to the City sewer main. That claim cannot succeed, however, because:

> (1) the lateral line and clean-out cap is owned and controlled by the customer, not by the City (Lawler Declar., at ¶ 5) (CR 121);
>
> (2) the cap in the line is not a motor-driven vehicle or motor-driven equipment;
>
> (3) opening clean-out caps on private property is not a precautionary requirement under industry standards (*see* Kurzy Declar., at ¶ 6, CR 126) (" Industry standards such as the Jetter Code of the NASSCO does not recommend or require that the clean-out caps on residential lines be opened as a precautionary measure for jetting a city sewer main."); and
>
> (4) the theory that the City's alleged failure to remove the clean-out cap is, in its essence, a claim that the City was negligent in failing or omitting to use property, not in using it. *Harris Cty. v. Annab*, 547 S.W.3d 609, 614 (Tex. 2018) ("non-use by definition is not use"); *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 (Tex. 2001) ("White's injury must have been caused by the TNRCC's actual use of the pump, not the TNRCC's failure to use it.").

In support of its plea to the jurisdiction, the City also conclusively negated the Castillejas claims that the City negligently maintained and constructed sewer conduits. Raw sewage in the lines flows by force of gravity, not by motorized mechanical means. The City's proof that the sewer main serving that neighborhood was adequate in capacity and in good working order was uncontroverted. Kurzy Declar., at ¶ 3, 7 (CR 124-25, 126-27). No evidence exists of any history of other backups occurring on that line. Lawler Declar., at ¶ 2 (CR 120).

6. <u>No Fact Issue Showing That Use of Operation of the Jetter Truck Proximately Caused the Sewage Overflow</u>.

For the Section 101.021(1) waiver to apply, the motorized vehicle's use or operation "must have actually caused the injury." *Dall. Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 543 (Tex. 2003) (internal quotations omitted). "[E]ven where the plaintiff has alleged a tort on the part of a government driver, there is no immunity waiver absent the negligent or otherwise improper use of a motor-driven vehicle." *Ryder Integrated Logistics, Inc. v. Fayette County*, 453 S.W.3d 922, 928 (Tex. 2015).

In the Court below, the City contended that no evidence showed that any negligence by a City employee in the use of the jetter truck or other

35

motorized property is what proximately caused the sewer backup into the Castillejas' mobile home. (CR 91, citing TEX. R. CIV. P. 166a(i)). In responding to the City's no-evidence motion, the Castillejas pointed to no evidence to show that the jetter truck's negligent operation is what actually caused the sewer backup of which they complained. While it is true that the jetter operation broke the blockage loose which allowed pressurized sewage that accumulated behind the blockage to run downstream in the sewer main, no evidence shows that the operation of the jetter device is what forced raw sewage into the Castillejas' mobile home. The City's evidence shows instead that the jetting operation had already concluded by the time Ms. Castilleja noticed sewage spilling out of her toilet. To reiterate, the cause of this accident was the founding of the home at an unsafe elevation in relation to the sewer main with no backflow protection.

## E. Constitutional Takings Claims.

"Only affirmative conduct by the government will support a takings claim." *Harris Cnty. Flood Control Dist. v. Kerr*, 499 S.W.3d 793, 799 (Tex. 2016) ("We have always characterized a takings claim as based on some affirmative 'act' or 'action' of the government."). "[M]ere negligence that

36

eventually contributes to property damage does not amount to a taking." *Tarrant Reg'l Water Dist. v. Gragg*, 151 S.W.3d 546, 554 (Tex. 2004). For a takings or damaging to occur, "the requisite intent is present when a governmental entity knows that a specific act is causing identifiable harm or knows that the harm is substantially certain to result." *Id.* at 555 (citing *City of Dallas v. Jennings*, 142 S.W.3d 310 (Tex. 2004)). "When damage is merely the accidental result of the government's act, there is no public benefit and the property cannot be said to be 'taken or damaged *for public use.*'" *Jennings*, 142 S.W.3d at 313 (quoting *Texas Highway Dep't v. Weber*, 147 Tex. 628, 219 S.W.2d 70, 71 (Tex. 1949) (emphasis original in *Jennings*)).

In *City of Dallas v. Jennings*, homeowners attempted to show the city's intent to cause sewage to overflow into their home with evidence that the city knew unclogging a sewer can sometimes cause the line to back up. However, as the Court held, "[t]he governmental entity's awareness of the mere possibility of damage is no evidence of intent." *City of San Antonio v. Pollock*, 284 S.W.3d 809, 821 (Tex. 2009) (explaining holding of *Jennings*).

37

In the present case, the City contended that no evidence exists to show that the City knew, when it unclogged the sewer line, that flooding damage to the Castillejas' property was substantially certain to result. (CR 92) (citing TEX. R. CIV. P. 166a(i)). The Castillejas did not show otherwise. Moreover, the City pointed to unrebutted record evidence proving conclusively that for two decades, no reported blockages of the 6-inch sewer main serving the area in question had occurred. Lawler Declar., at ¶ 2 (CR 120). In deposition, the Castillejas confirmed they had never experienced a sewer backup on their property for the twenty-plus years they had lived at 923 Birmingham. Lucio Castilleja Depo., at pg. 11, ln. 7-10 (CR 158); Laura Castillejo Depo., at pg. 6, ln. 14-19 (CR 147). Since 2017, the City had used jetter equipment to clear clogged sewer lines and never before had a residence flooded while using it. *See* Lawler Declar., at ¶ 3 (CR 3).

Accordingly, because the Castillejas' takings claim is invalid, the District Court erred in denying the City's combined plea/MSJ as to that claim. *See Jennings*, 142 S.W.3d at 315. And in any event, the Court erred in denying the City's subsidiary ground that personal injury damages are not authorized for a taking (CR 94), given that Article I, Section 17 of the

Texas Constitution only allows "just compensation" for a taking or damaging of "property." *Id.*; *see City of San Antonio v. Pollock*, 284 S.W.3d 809, 829 (Tex. 2009) (Medina, J., concurring in relevant part) ("Pollocks cannot recover under Article I, Section 17 because there is no evidence that the City intended a taking, and, apart from that, no basis for the award of personal injury damages even had the City intended to damage the Pollocks' property.").[6]

## F. Section 101.021(2) Personal Injury Claims.

Under TEX. CIV. PRAC. & REM. CODE § 101.021(2), "[a] governmental unit in the state is liable for: . . . (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law." Unlike Section 101.021(1) which expressly authorizes claims for property damage, Section 101.021(2) only provides for recovery of personal injury or death. *See Creel v. Woodlands Twp.*, 413 S.W.3d 502, 502 (Tex. App.—Beaumont 2013, no pet.).

---

[6] *See also Customer Co. v. City of Sacramento*, 10 Cal. 4th 368, 389, 895 P.2d 900, 913-14 (1995) ("inverse condemnation is limited to damage to property and does not apply to damage involving personal injury"); *Miller v. Campbell County*, 854 P.2d 71, 77 (Wyo. 1993) (rejecting reliance on tort law in holding that emotional distress is not a proper element of damages in inverse condemnation actions).

39

In the Court below, the City showed that the District Court lacked jurisdiction over the Castillejas' Section 101.021(2) claims for the following three reasons. First, as a matter of law, emotional distress resulting from property damage of this sort is non-compensable. (CR 93, 108-08). Second, in response to the City's no-evidence motion for summary judgment (CR 92-94, 111-16), the Castillejas failed to offer any evidence of any personal injury other than non-compensable emotional distress caused by property damage. Third, the Section 101.021(2) claims fail for the same reasons as do the Section 101.021(1) claims – no fact issue exists to show that the City was negligent in the use or condition of personal or real property. (CR 92-94, 104).

### 1. Non-Compensability of Emotional Distress Caused by Property Damage.

In support of their response to the City's no-evidence motion for summary judgment, the Castillejas' only proof of damages was two exhibits showing that both Lucio and Laura Castilleja suffered emotional distress as a result of the property damage caused by the sewer backup in question. (CR 184-90). While the City did not question the *bona fides* of these emotional injuries in this proceeding, the City has contended that

40

recovery for these injuries is disallowed by Texas common law and by the Tort Claims Act; so no jurisdiction lies to award them.

Section 101.025 of the Tort Claims Act "waives immunity from suit and defines the extent of that waiver by reference to Section 101.023's express limits of liability, i.e., 'to the extent of liability created by' the Tort Claims Act, including the limits or caps set out in Section 101.023." *Gulf Coast Ctr. v. Curry*, 658 S.W.3d 281, 287 (Tex. 2022) (quoting TEX. CIV. PRAC. & REM. CODE § 101.025(a)). "A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter." *Id*. at § 101.025(b). *A fortiori*, a person may *not* sue for damages unallowed by Chapter 101. *See also Gulf Coast Ctr.*, 658 S.W.3d at 286 ("a trial court must ascertain, as part of determining its jurisdiction, whether *and to what extent* the Tort Claims Act waives immunity from suit.") (emphasis original).

In the Court below, the City asserted, and the District Court erroneously denied, two immunity-based grounds to preclude suit for recovery of the emotional distress damages alleged by the Castillejas.

First, as a matter of Texas common law, mental anguish caused by property damage is non-compensable. *See City of Tyler v. Likes*, 962

41

S.W.2d 489, 494 (Tex. 1997) (explaining that "unless [the plaintiff] would have a claim for mental anguish under common law against a private defendant, we need not reach the question of whether mental anguish is a 'personal injury' for which the Legislature has waived the City's sovereign immunity" under section 101.021 of the Tort Claims Act).

In *Likes*, the plaintiff sued the City of Tyler for emotional distress caused by flood damage to her home, and the Court framed the issue whether such damages were recoverable as a question of common law. The Supreme Court held: "mental anguish is not recoverable based on actual past damage to property," and, "*a fortiori* Likes may not recover for mental anguish based on fear of future damage to her personal property and her home." This meant immunity barred Likes's claims for mental anguish damages, since "the City did not breach any duty that would subject it to liability for Likes's mental anguish if it were a private defendant." *Likes*, 962 S.W.2d at 497 (Tex. 1997).

The non-recoverability of the Castillejas' mental anguish damages falls squarely within the holding of *Likes* and its progeny. *See also, e.g., Davis v. City of Palestine*, 988 S.W.2d 854, 858 (Tex. App.—Tyler 1999, no pet.)(holding that "personal injury" under the Tort Claims Act does not

extend to mental-anguish caused by property damage); *City of Wylie v. Taylor*, 362 S.W.3d 855, 865 (Tex. App.—Dallas 2012, no pet.) (mental anguish caused by property damage is non-compensable under the Act); *El Paso Cty. Water Improvement Dist. #1 v. Ochoa*, 554 S.W.3d 51, 55-58 (Tex. App.—El Paso 2018, no pet.) (physical manifestations of mental-anguish, as a result of the canal flooding that caused damage to their personal and real property, held non-compensable under the Act); *Port of Houston Authority v. Aaron*, 415 S.W.3d 355, 364-65 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (same).

Second, the issue left open by the Court in *Likes* – whether mental distress is a "bodily injury" within the meaning of the Tort Claims Act – poses a separate jurisdictional bar. Section 101.023(c) of the Tort Claims Act only allows personal injury damages that compensate for "bodily injury or death." *Id*. Emotional distress without physical damage to the plaintiff's body is not allowed, regardless of how emotional distress may have been caused. *See Cavin v. Abbott*, 545 S.W.3d 47, 56 (Tex. App.—Austin 2017, no pet.) (defining "bodily injury" in the TCPA to mean "[p]hysical damage to a person's body") (quoting BLACK'S LAW DICTIONARY, 906 (10th ed. 2014)); *cf. Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 823-24

43

(Tex. 1997) (construing standard homeowners' insurance policy—which defined "'bodily injury' as 'bodily harm, sickness or disease'" — as "not includ[ing] purely emotional injuries," and further noting: "Our decision comports with the commonly understood meaning of 'bodily,' which implies a physical, and not purely mental, emotional, or spiritual harm."); THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 204 (5th ed. 2011) (defining "bodily," when used as an adjective, as "[o]f, relating to, or belonging to the body," and as "[p]hysical as opposed to mental or spiritual"). Accordingly, the lack of proof of any "bodily injury" in this case also precludes the recovery of personal injury damages under the Tort Claims Act.

2. <u>No Evidence of Other Bodily Injury</u>.

In deposition, Laura Castilleja conceded her only personal injury was the mental distress and inconvenience she has experienced as a result of her property loss. Laura Castilleja Depo., at pg. 16, ln. 2-9 (CR 151). On no-evidence motion for summary judgment, the City contended no evidence exists to prove otherwise (CR 92, 109, 111); and the Castillejas offered none in response. Accordingly, the District Court erred in denying the

44

City's plea/MSJ on Laura's claims for "bodily injury" under the Tort Claims Act. *Likes*, 962 S.W.2d at 497.

In Lucio Castilleja's case, his pleadings allege he suffered various maladies from the sewage spill. See Pet., at (CR 29-30). However, when challenged by the City's no-evidence summary judgment motion, he could not back up his pleadings with evidence.

To show a proximate causal link between illness and exposure to a hazardous substance, the plaintiff must prove: (1) actual exposure to a contaminant; (2) actual personal injury; and (3) either "general causation," or "specific causation." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex. 1997). The City directed its no-evidence challenge to each of these four elements of Lucio's toxic exposure claim. (CR 93-94, 112, citing TEX. R. CIV. P. 166a(i)). In his response, Lucio offered no proof of any of these elements. Accordingly, the District Court erred in denying the City's plea/MSJ on Lucio's claims for "bodily injury" under the Tort Claims Act. *Likes*, 962 S.W.2d at 497.

3. No Fact Issue of Negligence under Section 101.021(2).

In its appeal of the denial of immunity from suit on the Castillejas' Section 101.021(1) property damage claims, the City has shown that the Castillejas failed to raise a fact issue of any negligence on the part of the City. *See* argument and authorities cited at pp. 21-36, *supra*. To sum up, the uncontroverted evidence shows that (1) the six-inch sewer main serving the general area in question was adequate in size and in good working order, with no history of backups, (2) the city work crew that dislodged the blockage upstream of the Castilleja property used reasonable care and followed recognized industry standards in its operation of the jetter device, and (3) the backup was caused by the placement of the mobile home at a low elevation relative to the sewer main and the lack of backflow protection.

## G. Derivative Official Immunity.

The City's immunity defense to all tort claims in the case was also based on the concept of derivative public official immunity. As discussed, Section 101.021(1) of the TTCA makes a city liable for property damage arising from the operation of a motor vehicle and proximately caused by

an employee's negligence only if the "employee would be personally liable" under Texas law. Therefore, if official immunity would operate to protect the employee from personal liability, section 101.021(1) does not waive immunity. *City of Houston v. Sauls*, 690 S.W.3d 60, 69 (Tex. 2024); *City of Houston v. Rodriguez*, 704 S.W.3d 462, 468 (Tex. 2024) ("the governmental employer's immunity is not waived if its employee is protected by official immunity."). Derivative official immunity also applies to personal injury claims under Section 101.021(2). *See DeWitt v. Harris County*, 904 S.W.2d 650, 653-54 (Tex. 1995).

Official immunity shields government employees from liability in civil lawsuits that, with the benefit of hindsight, would second-guess their performance of discretionary duties and force them to defend decisions that were reasonable when made. *Sauls*, 690 S.W.3d at 69. Official immunity protects governmental employees when they are performing discretionary duties in good faith and within the scope of their authority. *See City of Lancaster v. Chambers*, 883 S.W.2d 650, 657 (Tex. 1994).

In the trial Court below, the City asserted derivative official immunity. (CR 91, 104-06). Mike Bruno, the city employee who supervised the operation of the jetting equipment that removed the reported blockage

47

from the sewer line on Birmingham St., was acting in the scope of his employment, performing a discretionary duty to clear a sewer line with jetter equipment (deciding placement of the hose, operating pressures, and when to reduce and cease pressure). Bruno Declar., at ¶ 2 (CR 122). Bruno operated the jetter device in objective "good faith," applying industry recognized standards according to which a reasonably prudent employee might have believed that the jetting operation was safe. *Chambers*, 883 S.W.2d at 657-58. *See* Kurzy Declar., at ¶¶ 5-6, 9 (CR 125-28).

"[W]hen the summary-judgment record bears competent evidence of good faith, that element of the official-immunity defense is established unless the plaintiff shows that no reasonable person in the officer's position could have thought the facts justified the officer's actions." *Tex. Dep't of Pub. Safety v. Bonilla*, 481 S.W.3d 640, 643 (Tex. 2015). The Castillejas did not respond to the City's derivative immunity argument, much less point to any evidence controverting the City's showing of good faith or the other elements of official immunity. Thus, the plea to the jurisdiction should have been granted for the City on all tort claims. *See City of Houston v. Rodriguez*, 704 S.W.3d at 474-75.

## H.     Claims for Punitive Damages.

The prayer of the Castillejas' petition seeks only actual damages (CR 36-37), but in the body of the petition they request exemplary damages. Pet., at ¶ 40(i) (CR 33). Such damages are unauthorized by the Tort Claims Act, *see* TEX. CIV. PRAC. & REM. CODE § 101.024; *City of LaPorte v. Barfield*, 898 S.W.2d 288, 299 (Tex. 1995); or by Article I, Section 17 of the Texas Constitution. *See City of San Antonio v. Pollock*, 155 S.W.3d 322, 333 (Tex. App.—San Antonio 2004), *rev'd on other grounds*, 284 S.W.3d 809 (Tex. 2009); *City of Odessa v. Bell*, 787 S.W.2d 525, 528-29 (Tex. App.—El Paso 1990, writ denied). Accordingly, the plea to the jurisdiction should have been granted on claims for punitive damages.

## I.     Claims for Attorney's Fees.

Attorney's fees are not recoverable unless authorized by statute or by contract. *See New Amsterdam Casualty Co. v. Texas Indus. Inc.*, 414 S.W.2d 914, 915 (Tex. 1967). The Tort Claims Act does not authorize the recovery of attorneys' fees. *See Manbeck v. Austin Indep. Sch. Dist.*, 381 S.W.3d 528, 531 (Tex. 2012). Nor does Article I, Section 17 of the Texas Constitution. *See, e.g., City of San Antonio v. El Dorado Amusement Co.*, 195 S.W.3d 238, 249 (Tex. App.—San Antonio 2006, pet. denied); *MBP*

49

*Corp. v. Bd. of Trs. of the Galveston Wharves*, 297 S.W.3d 483, 491 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (same). Thus, the Castillejas' claims for attorney's fees should have been dismissed for want of jurisdiction.

* * * *

## VII. PRAYER.

For each of the foregoing reasons, the Appellant, City of Huntsville, requests the Court of Appeals to reverse and render judgement for the City dismissing with prejudice for want of subject matter jurisdiction all claims brought by the Plaintiff-Appellees against the City. Without waiving the foregoing, and in the alternative, the City requests the Court to reverse and render judgment dismissing with prejudice any claim for damages for which immunity from suit is shown herein to deprive the District Court of subject matter jurisdiction. The City further requests the Court of Appeals to award the City its taxable costs of this appeal and any other or further relief to which the City may be entitled in this appeal.

* * * * *

Respectfully submitted,

VIADA & STRAYER

By: /s/ **RAMÓN G. VIADA III**
　　　Ramón G. Viada III
　　　State Bar No. 20559350
　　　rayviada@viadastrayer.com
　　　17 Swallow Tail Court
　　　The Woodlands, Texas 77381
　　　281-419-6338

COUNSEL FOR APPELLANT
CITY OF HUNTSVILLE

## CERTIFICATE OF COMPLIANCE

Pursuant Tex. R. App. P. 9.4 (i)(3), the undersigned certifies that this Brief complies with the typeface and volume limitations of T.R.A.P. 9.4 (e) and (i)(B). This Brief is printed in 14-point typeface, except for footnotes, which are in 12-point typeface. Exclusive of the exempted portions of T.R.A.P. 9.4(i)(1), this Brief contains **10,508** words as indicated by the word count function of application used to create it.

**RAMÓN G. VIADA III**
Ramón G. Viada III

51

## CERTIFICATE OF SERVICE

I certify that all counsel of record have been served a true and correct copy of this Brief by electronic submission for filing and service through the Texas Online EFiling for Courts on May 26, 2025.

/s/ *RAMÓN G. VIADA III*
Ramón G. Viada III

# APPENDIX

**A.**      **Order Denying Plea to the Jurisdiction (CR 237)**

**B.**      **Tex. Civ. Prac. & Rem. Code § 101.021**

**C.**      **Tex. Civ. Prac. & Rem. Code § 101.023**

**D.**      **Tex. Civ. Prac. & Rem. Code § 101.024**

**E.**      **Tex. Civ. Prac. & Rem. Code § 101.025**

**F.**      **Tex. Const. Art. 1, Sec. 17**

Cause No. 2331107

| | | |
|---|---|---|
| LUCIO CASTILLEJA and | § | IN THE DISTRICT COURT OF |
| LAURA CASTILLEJA, | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | WALKER COUNTY, TEXAS |
| | § | |
| CITY OF HUNTSVILLE, TEXAS, | § | |
| a Texas municipality, | § | |
| *Defendant*. | § | 278th JUDICIAL DISTRICT |

**ORDER ~~GRANTING~~ DENYING PLEA TO THE JURISDICTION
AND NO-EVIDENCE MOTION FOR SUMMARY JUDGMENT**

Pending before the Court is Defendant City of Huntsville's Plea to the Jurisdiction and No-Evidence Motion for Summary Judgment. The Court, having considered the plea, the motion for summary judgment, and any timely filed responses or replies, finds that the combined plea and no-evidence motion ~~are meritorious and are hereby granted on all grounds raised.~~ should be denied.

Therefore, it is ordered, that ~~each and every one of Plaintiffs' claims against City of Huntsville are DISMISSED WITH PREJUDICE for want of subject matter jurisdiction.~~ the plea to the jurisdiction and no-evidence motion for summary judgment is DENIED.

~~Defendant City's costs of court shall be taxed against Plaintiffs.~~

Signed ___March 12_____, 2025.

_____
JUDGE PRESIDING
278th Judicial District Court

Filed: 3/12/2025 12:22:07 pm
Leslie Woolley
District Clerk
Walker County, Texas
By: Jessica Reese

237

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: SB14, SB2, SB365, SB262, SB1058, SB608, SB1409, HB135, SB1145, SB1697, SB513, SB1809, SB836. \*\*\*

*Texas Statutes &*
*Codes Annotated by LexisNexis®* >
*Civil Practice and Remedies Code* >
*Title 5 Governmental Liability (Chs. 101 — 117)* >
*Chapter 101 Tort Claims (Subchs. A — D)* >
*Subchapter B Tort Liability of Governmental Units (§§ 101.021 — 101.029)*

## Sec. 101.021. Governmental Liability.

A governmental unit in the state is liable for:

**(1)** property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:

**(A)** the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and

**(B)** the employee would be personally liable to the claimant according to Texas law; and

**(2)** personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

## History

Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# Tex. Civ. Prac. & Rem. Code § 101.023

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: SB14, SB2, SB365, SB262, SB1058, SB608, SB1409, HB135, SB1145, SB1697, SB513, SB1809, SB836. ***

*Texas Statutes &*
*Codes Annotated by LexisNexis®* >
*Civil Practice and Remedies Code* >
*Title 5 Governmental Liability (Chs. 101 — 117)* >
*Chapter 101 Tort Claims (Subchs. A — D)* >
*Subchapter B Tort Liability of Governmental Units (§§ 101.021 — 101.029)*

## Sec. 101.023. Limitation on Amount of Liability.

**(a)** Liability of the state government under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

**(b)** Except as provided by Subsection (c), liability of a unit of local government under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

**(c)** Liability of a municipality under this chapter is limited to money damages in a maximum amount of $250,000 for each person and $500,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

**(d)** Except as provided by Section 78.001, liability of an emergency service organization under this chapter is limited to money damages in a maximum amount of $100,000 for each person and $300,000 for each single occurrence for bodily injury or death and $100,000 for each single occurrence for injury to or destruction of property.

## History

Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985; am. Acts 1987, 70th Leg., 1st C.S., ch. 2 (S.B. 5), § 3.03, effective September 2, 1987; am. Acts 1995, 74th Leg., ch. 827 (H.B. 2603), § 2, effective August 28, 1995; am. Acts 1997, 75th Leg., ch. 968 (H.B. 2169), § 2, effective September 1, 1997.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# Tex. Civ. Prac. & Rem. Code § 101.024

\*\*\* This document is current through the 2025 Regular Session of the 89th Legislature bills: SB14, SB2, SB365, SB262, SB1058, SB608, SB1409, HB135, SB1145, SB1697, SB513, SB1809, SB836. \*\*\*

*Texas Statutes & Codes Annotated by LexisNexis®* >
*Civil Practice and Remedies Code* >
*Title 5 Governmental Liability (Chs. 101 — 117)* >
*Chapter 101 Tort Claims (Subchs. A — D)* >
*Subchapter B Tort Liability of Governmental Units (§§ 101.021 — 101.029)*

## Sec. 101.024. Exemplary Damages.

This chapter does not authorize exemplary damages.

## History

Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

# Tex. Civ. Prac. & Rem. Code § 101.025

*** This document is current through the 2025 Regular Session of the 89th Legislature bills: SB14, SB2, SB365, SB262, SB1058, SB608, SB1409, HB135, SB1145, SB1697, SB513, SB1809, SB836. ***

*Texas Statutes & Codes Annotated by LexisNexis®* >
*Civil Practice and Remedies Code* >
*Title 5 Governmental Liability (Chs. 101 — 117)* >
*Chapter 101 Tort Claims (Subchs. A — D)* >
*Subchapter B Tort Liability of Governmental Units (§§ 101.021 — 101.029)*

## Sec. 101.025. Waiver of Governmental Immunity; Permission to Sue.

**(a)** Sovereign immunity to suit is waived and abolished to the extent of liability created by this chapter.

**(b)** A person having a claim under this chapter may sue a governmental unit for damages allowed by this chapter.

## History

Enacted by Acts 1985, 69th Leg., ch. 959 (S.B. 797), § 1, effective September 1, 1985.

Texas Statutes & Codes Annotated by LexisNexis®
Copyright © 2025 All rights reserved.

*** This document is current through the 2023 Regular Session; the 1st C.S.; the 2nd C.S.; the 3rd C.S. and the 4th C.S. of the 88th Legislature; and the November 7, 2023 general election results. ***

*Texas Constitution*

*Annotated by LexisNexis®*         **>**
*Constitution of the State of Texas 1876*         **>**
*Article I Bill of Rights*

## Sec. 17. Taking Property for Public Use; Special Privileges and Immunities; Control of Privileges and Franchises.

**(a)** No person's property shall be taken, damaged, or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person, and only if the taking, damage, or destruction is for:

    **(1)** the ownership, use, and enjoyment of the property, notwithstanding an incidental use, by:

        **(A)** the State, a political subdivision of the State, or the public at large; or

        **(B)** an entity granted the power of eminent domain under law; or

    **(2)** the elimination of urban blight on a particular parcel of property.

**(b)** In this section, "public use" does not include the taking of property under Subsection (a) of this section for transfer to a private entity for the primary purpose of economic development or enhancement of tax revenues.

**(c)** On or after January 1, 2010, the legislature may enact a general, local, or special law granting the power of eminent domain to an entity only on a two-thirds vote of all the members elected to each house.

**(d)** When a person's property is taken under Subsection (a) of this section, except for the use of the State, compensation as described by Subsection (a) shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities shall be made; but all privileges and franchises granted by the Legislature, or created under its authority, shall be subject to the control thereof.

## History

Amendment proposed by Acts 2009, 81st Leg., H.J.R. No. 14, § 1.01, approved by the electorate (Prop. 11) at the November 3, 2009 election.

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Jennifer Holloway on behalf of Ramon Viada
Bar No. 20559350
jholloway@viadastrayer.com
Envelope ID: 101250823
Filing Code Description: Brief Requesting Oral Argument
Filing Description: Appellant's Brief
Status as of 5/27/2025 7:29 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Robert Thomson | | robert@thomsonfirm.com | 5/26/2025 6:10:32 PM | NOT SENT |
| Aaron Pavlock | 24107045 | pavlockfirm@outlook.com | 5/26/2025 6:10:32 PM | NOT SENT |
| Ramon G.Viada | | rayviada@viadastrayer.com | 5/26/2025 6:10:32 PM | NOT SENT |
| Jennifer Holloway | | jholloway@viadastrayer.com | 5/26/2025 6:10:32 PM | NOT SENT |